IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **TAYLOR HARRIS,** | Case No. 1:22-CV-01279 |
| **Plaintiff,** | |
| -vs- | JUDGE PAMELA A. BARKER |
| **FORD MOTOR COMPANY,** | MEMORANDUM OPINION AND ORDER |
| **Defendant.** | |

This matter comes before the Court upon the Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) of Defendant Ford Motor Company ("Defendant") filed on July 21, 2022 ("Defendant's Motion"). (Doc. No. 5.) Plaintiff Taylor Harris ("Plaintiff") filed a Brief in Opposition on August 1, 2022 ("Plaintiff's Opposition") (Doc. No. 7) to which Defendant replied on August 10, 2022 ("Defendant's Reply") (Doc. No. 9).

For the following reasons, Defendant's Motion is GRANTED.

I. Background

A. Factual Allegations

Plaintiff's Complaint sets forth the following allegations. Plaintiff was an employee of Defendant and working at Defendant's automobile manufacturing facility in Avon Lake, Ohio. (Doc. No.1-2, ¶¶ 1, 3.) On or about February 16, 2020, Defendant had an Ingersol-Rand 40 Volt Nutrunner ("Nutrunner") "in operation on its premises." (*Id.* at ¶¶ 3, 5.) On or about June 16, 2020, Plaintiff "was operating the Nutrunner for its intended purposes, as instructed by her employer, and in the course and scope of her employment with Defendant." (*Id.* at ¶ 6.) On that date, Plaintiff "was

severely and permanently hurt by the unintended and inappropriate action of said Nutrunner, causing serious and permanent injuries to Plaintiff's right and dominant hand." (*Id.* at ¶ 7.)

Plaintiff alleges that Defendant, "by and through its employees and supervisors, required Plaintiff to work with the Nutrunner without working safety guards in place and without other necessary safety equipment." (*Id.* at ¶ 8.) Defendant "knew that allowing an employee to operate the Nutrunner without proper working safety guards was done with an intent to injury [sic] the employee, or with the clear belief that injury was substantially certain to occur to employees, including the Plaintiff." (*Id.* at ¶ 9.) Defendant "instructed and/or required Plaintiff to work in these substantially dangerous and hazardous conditions," and because of such conditions, Defendant knew that "harm to the Plaintiff was certain to occur." (*Id.* at ¶¶ 11-12.) According to Plaintiff, Defendant "acted with deliberate intent to cause an employee to suffer an injury, disease, condition, or death within the meaning of O.R.C. 2745.01." (*Id.* at ¶ 12.) Plaintiff alleges that as a "direct and proximate result" of Defendant's actions, she experienced, and will continue to experience into the indefinite future, extreme pain, suffering, mental and emotional trauma, and substantial economic loss. (*Id.* at ¶¶ 13-18.)

    **B.**    **Procedural History**

On June 10, 2022, Plaintiff filed her Complaint in the Lorain County Court of Common Pleas. (Doc. No. 1-2, ¶ 12.) On July 19, 2022, Defendant filed a Notice of Removal in this Court based on this Court's original diversity jurisdiction of the action under 28 U.S.C. § 1332(a). (Doc. No. 1.) Defendant filed the instant Motion to Dismiss on July 21, 2022 (Doc. No. 5), which Plaintiff opposed on August 1, 2022 (Doc. No. 7), and Defendant replied on August 10, 2022 (Doc. No. 8). Defendant's Motion is ripe for decision.

**II.     Standard of Review**

Defendant moves to dismiss Plaintiff's Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff, argues, however, that the pleading standard under Rule 8(A) of the Ohio Rules of Civil Procedure applies. (Doc. No. 7 at 4-6.)

The law here is clear. "Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). This includes federal courts sitting in diversity in cases that have been removed from state court. *Armstrong v. Shirvell*, 596 F. App'x 433, 444 (6th Cir. 2015) ("In diversity cases, including those removed from state court, the federal pleading standards apply."); *see also* Fed. R. Civ. P. 81(c)(1) ("These rules apply to a civil action after it is removed from a state court."). Accordingly, the Court analyzes the sufficiency of Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6).

Under Rule 12(b)(6), the Court accepts Plaintiff's factual allegations as true and construes the Complaint in the light most favorable to Plaintiff. *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). To survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the Complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. Nat. Collegiate Athletic Ass'n*,

528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555-56). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."'" *Gunasekera*, 551 F.3d at 466 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). Nonetheless, while "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

### III. Analysis

Defendant argues that under Ohio's heightened pleading standard for intentional torts committed by an employer, Ohio Revised Code § 2745.01, Plaintiff "fails to plead with particularity facts showing her employer deliberately intended to injure her." (Doc. No. 5 at 1.) Specifically, Defendant argues that Plaintiff's Complaint "merely recites the elements of an intentional tort and vaguely alleges that [Defendant] required [Plaintiff] to use an electric wrench device without 'safety guards in place and without other necessary safety equipment.'" (*Id.* (quoting Doc. No. 1-2, ¶ 8).) Defendant argues that because Plaintiff "does not identify what guards were missing, where on the

4

electric wrench a guard could have been placed, or how a guard would have prevented her injuries, and she does not claim that [Defendant] removed any guards from the electric wrench," her conclusory allegations are insufficient to allege a plausible claim that Defendant committed an intentional tort. (*Id.*)

Plaintiff argues that Ohio Revised Code § 2745.01 "only requires the Plaintiff to allege that the employer deliberately removed the safety guard." (Doc. No. 7 at 4.) Plaintiff argues that she sufficiently made such an allegation in the Complaint, though she does not identify where in her Complaint she made this allegation. (*Id.*)

Section 2745.01 of the Ohio Revised Code reads:

(A) In an action brought against an employer by an employee, or by the dependent survivors of a deceased employee, for damages resulting from an intentional tort committed by the employer during the course of employment, the employer shall not be liable unless the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur.

(B) As used in this section, "substantially certain" means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death.

(C) Deliberate removal by an employer of an equipment safety guard or deliberate misrepresentation of a toxic or hazardous substance creates a rebuttable presumption that the removal or misrepresentation was committed with intent to injure another if an injury or an occupational disease or condition occurs as a direct result.

Ohio Rev. Code § 2745.01.

According to the Ohio Supreme Court, the Ohio General Assembly, in enacting the instant statute, "intended to limit claims for employer intentional torts to situations in which an employer acts with the 'specific intent' to cause an injury to another." *Houdek v. TyssenKrupp Materials N.A., Inc.*, 983 N.E.2d 1253, 1258 (Ohio 2012). Thus, under section 2745.01 of the Ohio Revised Code,

5

"absent a deliberate intent to injure another, an employer is not liable for a claim alleging an employer intentional tort, and the injured employee's exclusive remedy is within the workers' compensation system." *Id.*; *see also Spangler v. Sensory Effects Powder Sys., Inc.*, 2015 WL 1505766, at *3-4 (N.D. Ohio Apr. 1, 2015).

To that end, under § 2745.01, "[a]n employee asserting an employer intentional tort claim is subject to a 'heightened standard of review' under a Rule 12(b)(6) motion to dismiss." *O'Connor v. Nationwide Children's Hosp.*, 219 F. Supp. 3d 673, 680 (S.D. Ohio 2016) (quoting *Byrd v. Faber*, 565 N.E.2d 584, 589 (Ohio 1991)). This heightened pleading standard is due to "the need to deter the number of baseless claims against employers, the importance of preventing every workplace injury from being converted into an intentional tort claim, and the goal of facilitating the efficient administration of justice." *Byrd*, 565 N.E.2d at 589. Ohio's "heightened pleading standard for employer intentional torts is substantive law," and thus, applied by federal courts sitting in diversity. *Downey v. Reich Installation Servs., Inc.*, 2009 WL 2922262, at *3 (N.D. Ohio Sept. 8, 2009) (noting that "[t]he heightened pleading standard functions much in the same way as other 'procedural' rules that have been held to be substantive in nature, such as state statute of limitations").

Accordingly, the Court will analyze Plaintiff's Complaint under Ohio's heightened pleading standard for alleged intentional torts committed by employers. A claim of intentional tort against an employer will be dismissed unless the "complaint alleges facts showing that the employer: (1) specifically desired to injure the employee; or (2) knew that injury to an employee was certain or substantially certain to result from the employer's act and despite this knowledge, still proceeded." *Mitchell v. Lawson Milk Co.*, 532 N.E.2d 753, 756 (Ohio 1988). Because the statute requires a deliberate intent to injure, or knowledge that an injury was substantially certain to occur, an allegation

6

that "the accident could have been avoided had certain precautions been taken . . . is still insufficient to satisfy the statute." *Spangler*, 2015 WL 1505766, at *4.

In *Spangler*, the plaintiff alleged that his employer "knowingly and intentionally subjected him to machines and equipment that did not have required explosion and fire protection mechanisms," and that "he was required to work without adequate fire protection equipment and personal protective equipment." *Id.* at *4-5. The court construed the plaintiff's claims to be allegations of an unsafe work environment—in other words, that if his employer took certain precautions, the plaintiff's injury could have been prevented. *Id.* The court concluded that the plaintiff's claims failed under Ohio's heightened pleading standard because the plaintiff did not allege that his employer had the "specific intent" to deliberately injure him. *Id.* (citing *Houdek*, 983 N.E.2d at 1258-59).

Likewise, in *Downey v. Reich Installation Servs., Inc.*, 2009 WL 1416046, at *3 (N.D. Ohio May 19, 2009), another court in this district held that the plaintiff failed to plausibly allege an employer intentional tort because the plaintiff only alleged that his employer knowingly required the plaintiff to operate machinery without proper safety equipment. *Id.* Indeed, "the complaint lack[ed] factual information relating to the equipment, the circumstances surrounding the incident and the employer's role in the incident." *Id.* Thus, the court determined that "the complaint simply reformulate[ed] the required elements of the claim in a conclusory manner," and thus failed to state a plausible claim.

The Court concludes that Plaintiff's allegations fail to meet Ohio's heightened pleading requirement for employer intentional torts. Plaintiff's Complaint is entirely void of any allegations that Defendant deliberately intended to injure her, or that Defendant knew her injury was substantially certain to occur as a result of Defendant's own action. In fact, Plaintiff does nothing to identify the

7

allegedly necessary but missing safety guard on the Nutrunner or Defendant's involvement in the missing safety guard, nor does Plaintiff allege how such a safety guard would have prevented her injury from occurring.  Nevertheless, allegations of a dangerous work environment or of the lack of necessary safety equipment are not enough to state a plausible claim.  *See Downey*, 2009 WL 1416046, at *3; *Spangler*, 2015 WL 1505766, at *4-5.  Rather, Plaintiff alleges only that Defendant required her "to work with the Nutrunner without working safety guards in place and without other necessary safety equipment," and that because of such a requirement, Defendant knew that "injury was substantially certain to occur to employees, including the Plaintiff."  (Doc. No. 1-2, ¶¶ 8-9.)  Plaintiff further alleges that working without the safety guards and other necessary safety equipment required Plaintiff to work in "substantially dangerous and hazardous conditions," and because of such conditions, Defendant knew that "harm to the Plaintiff was certain to occur."  (*Id.* at ¶¶ 11-12.)

These allegations are similar to those in *Downey*, wherein the plaintiff alleged that his employer knowingly required him to operate machinery without proper safety equipment, but failed to provide any factual information relating to the employer's role in the incident, the safety equipment missing, or the circumstances surrounding the incident.  *Downey*, 2009 WL 1416046, at *3.  Because Plaintiff's Complaint alleges nothing more than the lack of necessary safety equipment, and the resulting unsafe working conditions, Plaintiff's Complaint fails.  *See Spangler*, 2015 WL 1505766, at *4-5.

Further, Plaintiff makes no allegations that Defendant "deliberately removed" the necessary safety guard to create a rebuttable presumption that the removal "was committed with intent to injure," under Ohio Revised Code § 2745.01(C).  Rather, Plaintiff admits in her Opposition that she "does not know who removed the safety guard."  (Doc. No. 7 at 3.)  Thus, Plaintiff does not allege

8

that Defendant deliberately removed the safety guard with the intent to injure her. *See Houdek*, 983 N.E.2d at 1259 (noting that the "plain meaning of the word 'remove' is 'to move by lifting, pushing aside, or taking away or off,'" in holding that there was no evidence in the record that the employer deliberately removed any of the alleged safety guards (quoting Webster's Third New Int'l Dictionary 1921 (1986)). Accordingly, Plaintiff's Complaint fails to state a claim for which relief can be granted.

As a final matter, in a footnote, Plaintiff notes "as an alternative, should this court find plaintiffs' [sic] Complaint requires some further factual support, it is free to grant plaintiffs' [sic] leave to amend and resolve any issue herein." (Doc. No. 7 at 6 n.1.) To the extent Plaintiff's footnote is meant to be construed as a request that the Court grant her leave to amend her Complaint, that request is denied. Plaintiff chose not to amend her Complaint upon receipt of Defendant's Motion to Dismiss. Moreover, Plaintiff failed to follow the proper procedure for requesting leave to amend. "[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought . . . does not constitute a motion within the contemplation of Rule 15(a)." *La. Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010) (quoting *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 698 (6th Cir. 2004)). Indeed, "[a] request for leave to amend 'almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is . . . not a motion to amend.'" *Id.* (quoting *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 784 (6th Cir. 2000)). Finally, Plaintiff does not argue that she could plead additional facts that would result in the denial of Defendant's Motion to Dismiss. Accordingly, the Court denies Plaintiff's request.

**IV.    Conclusion**

For the reasons set forth above, Defendant's Motion to Dismiss (Doc. No. 5) is GRANTED.

**IT IS SO ORDERED.**

Date: October 13, 2022

*s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE